IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER (614)753-3193 | Case No. 2:21-mj-394<br><br>Magistrate Judge Vascura<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Robert J. Schmitz,** being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation and have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in Attachment B, to determine the location of the target cellular device which is assigned dialed number 614-753-3193, referred to in this affidavit as the "**Target Cellular Device**," and which is described in Attachment A. This affidavit is made in support of a search warrant to locate the phone by utilizing a device that acts as a cell phone tower, sometimes referred to as a Cell Site Simulator or Wi-Fi geo-location device.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the **Target Cellular Device's** location. However, there is reason to believe the **Target Cellular Device** is currently located somewhere within this district because investigators have engaged in electronic surveillance of geo-location data transmissions transmitting from the **Target Cellular Device** as recently as the first week of June 2021 and know, based on the current investigation, that the user of the **Target Cellular Device** is believed to reside in the Columbus, Ohio area (Southern District of Ohio), and travel to meet with an individual and conduct drug transactions in the Detroit, Michigan area (Eastern District of Michigan). Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cellular Device** outside the district provided the device is within the district when the warrant is issued.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that UNKNOWN MALE is using the **Target Cellular Device**. I know from training and experience that cell phone users normally have their cellular telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the **Target Cellular Device** will constitute and lead to evidence of federal offenses, namely Title 21 United States Code §§ 841 and 846, the unlawful distribution of controlled substances and conspiracy to distribute controlled substances, committed by UNKNOWN MALE.

2

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## **PROBABLE CAUSE**

8. The FBI is currently investigating a prescription narcotic diversion scheme operating in the metropolitan Detroit area. The scheme involves DANGELO STEPHENS and others who are diverting prescription opioids to street sales through their association with various medical clinics and pharmacies located in the Detroit area.

9. On April 26, 2021, the Honorable David Lawson, United States District Judge, Eastern District of Michigan, authorized the initial interception of wire and electronic communications on telephone number 248-525-4680, which is a T-Mobile cellular device utilized by STEPHENS. The initial interception of 248-525-4680 ended on May 26, 2021.

10. On May 26, 2021, Judge Lawson authorized the continued interception of wire and electronic communications on 248-525-4680. This interception is scheduled to end on June 25, 2021.

11. During the period of interception, STEPHENS has been in frequent communication with UNKNOWN MALE who is using the **Target Cellular Device**. An administrative subpoena issued to Cellco Partnership, d/b/a Verizon Wireless confirmed that the **Target Cellular Device** is serviced by Verizon. However, the administrative subpoena did not provide the actual name of the subscriber on the account, and instead provided the following information in the "Business Name" field of the subscriber details: "Please forward to reseller: CHARTERCOMM".

3

12. I believe, based on my training, experience, and review of the intercepted Title III calls between STEPHENS and UNKNOWN MALE, that the conversations are in relation to and in furtherance of the illegal distribution of controlled substances, specifically prescription narcotic pills. The following conversations, among others, have taken place between STEPHENS and UNKNOWN MALE who is using the **Target Cellular Device**:

13. On April 27, 2021, at approximately 12:22 PM, STEPHENS received an incoming call from UNKNOWN MALE who was using the **Target Cellular Device**. The following conversation took place:

- **UNKNOWN MALE**: D
- **STEPHENS**: Yeah
- **UNKNOWN MALE**: What's the word man?
- **STEPHENS**: I know I gave him, he got the wrong ones, them was for somebody else, but I got your, I got your 90
- **UNKNOWN MALE**: Ok
- **STEPHENS**: I get them today
- **UNKNOWN MALE**: Alright just let me know, I need some more too
- **STEPHENS**: I know, I don't, I won't, I ain't gonna tell you today, but this week for sure you'll have, you'll have em
- **UNKNOWN MALE**: Alright just let me know when you want me (unintelligible)
- **STEPHENS**: Alright
- **UNKNOWN MALE**: Ok

4

14. I believe, based on my training, experience, and review of the above intercepted call, that UNKNOWN MALE was using the **Target Cellular Device** to check with STEPHENS on the status of the prescription pills that STPEHENS would have available to sell later that day. STEPHENS replies to UNKNOWN MALE that he had his "90". I know from prior experience investigating prescription drug diversion schemes that "90" is a typical quantity of pills for which oxycodone 30mg prescriptions are issued. UNKNOWN MALE then tells STEPHENS that he needs more pills, to which STEPHENS indicates that he will have more pills available to sell to UNKNOWN MALE later in the week.

15. On May 4, 2021, at approximately 2:57 PM, STEPHENS received an incoming call from UNKNOWN MALE who was using the **Target Cellular Device**. The following conversation took place:

- **STEPHENS:** What up doe?
- **UNKNOWN MALE:** You out selling, (N-Word)?
- **STEPHENS:** I'm about to have some....you heard me?
- **UNKNOWN MALE:** I ain't hear you.
- **STEPHENS:** I said I'm about to have some.
- **UNKNOWN MALE:** Alright, uh, grab [Unintelligible].
- **STEPHENS:** I'm a let you know in a minute, probably 'bout an hour.
- **UNKNOWN MALE:** Alright, I can do the 30 too for you.
- **STEPHENS:** Shit, that's damn near what it's gonna have to be I ain't gonna lie but I got you for sure.
- **UNKNOWN MALE:** Ok, I'm on my way there.

5

- **STEPHENS:** Alright.

16. I believe, based on my training, experience, and review of the above intercepted call, that UNKNOWN MALE was using the **Target Cellular Device** once again to check with STEPHENS on the status of pills that were available for sale. STEPHENS tells UNKNOWN MALE that he is about to have some and UNKNOWN MALE responds that he can "do the 30 too for you". I believe, based on my knowledge of the Detroit-area street values for diverted narcotic pills, that UNKNOWN MALE is offering to pay STEPHENS $30 for each oxycodone 30mg pill that STEPHENS had available.

17. On May 8, 2021, at approximately 7:17 PM, STEPHENS received an incoming call from UNKNOWN MALE who was using the **Target Cellular Device**. The following conversation took place:

- **STEPHENS:** Hello?
- **UNKNOWN MALE:** Hey.
- **STEPHENS:** Yeah.
- **UNKNOWN MALE:** Where you at man?
- **STEPHENS:** Uh, I'm downtown right now.
- **UNKNOWN MALE:** Aight. You want me to come downtown [unintelligible] I'm driving
- **STEPHENS:** Uhhh, you said come to where?
- **UNKNOWN MALE:** I'm just getting to [unintelligible]. I'm just now getting into Michigan so I'm like -
- **STEPHENS:** Oh yeah, yeah, just meet - be by like -meet me by the Westin hotel area, up in there.

6

- **UNKNOWN MALE:**     Did he bang em?
- **STEPHENS:**     Nope. They only, I only got the 90. They bullshitting talking about, them people tell them Monday.
- **UNKNOWN MALE:**     Man, alright
- **STEPHENS:**     I know, I know man
- **UNKNOWN MALE:**     [Unintelligible]...I ain't too bad. I can haul the stuff, what I grabbed uh yesterday and today
- **STEPHENS:**     Right
- **UNKNOWN MALE:**     [Unintelligible]..shit I'm coming, just hold 'em for me D.
- **STEPHENS:**     I been holding 'em
- **UNKNOWN MALE:**     [Unintelligible]..I'm telling you what to do man, value your own [Unintelligible], put your shit to the side. I'm buying them bitches over what every [N-word] talkin about givin you.
- **STEPHENS:**     I know man, I'm gonna have to do, Im'a get on it, be shit, we'll just spend the next two weeks. Get you together, I'm gonna have mine to the side, I'm just going to shoot on down there
- **UNKNOWN MALE:**     OK. Alright. Shit, I'm gonna call you as soon as I'm coming up off the freeway.
- **STEPHENS:**     Alright

18.     During the above call, UNKNOWN MALE was using the **Target Cellular Device** to talk to STEPHENS to determine STEPHENS' location and setup a transaction where UNKNOWN MALE would purchase 90 prescription pills from STEPHENS. STEPHENS relays

7

his location to UNKNOWN MALE and then tells UNKNOWN MALE that he only had 90 pills available to sell to UNKNOWN MALE, instead of the higher quantity that UNKNOWN MALE was hoping for. During this call, UNKNOWN MALE tells STEPHENS to set pills to the side for UNKNOWN MALE because UNKNOWN MALE is willing to pay a higher price per pill, compared to other buyers. STEPHENS also tells UNKNOWN MALE that he is going to "spend the next two weeks…I'm gonna have mine to the side". I believe, based on my review of this call, that STEPHENS is indicating to UNKNOWN MALE that he is going to gather a larger quantity of pills for a future transaction with UNKNOWN MALE.

19. On May 18, 2021, the Honorable Magistrate Judge R. Steven Whalen authorized search warrant 20-MC-50918-8, which compelled Verizon to provide precision location information and real time cell site information for the **Target Cellular Device**. Agents have continually analyzed the location information for the **Target Cellular Device** provided by Verizon and have learned that the UNKNOWN MALE is likely residing in the Columbus, OH, area.

20. Agents also learned from the Title III on STEPHENS and the precision location information for the **Target Cellular Device** that the UNKNOWN MALE has continued to travel to Detroit to purchase narcotics from STEPHENS. The most recent suspected drug transaction took place on June 1, 2021. The following call took place on June 1, 2021:

21. On June 1, 2021, at approximately 10:36 AM, STEPHENS received an incoming call from UNKNOWN MALE who was using the **Target Cellular Device**. The following conversation took place:

- **UNKNOWN MALE:** Hey I'm on the highway, uh, I got like (unintelligible) 12 on me too and your money too (unintelligible).
- **STEPHENS:** Yup.

- **UNKNOWN MALE:**  I got like 12 on me now and then I got your uh 30, what was it 3280, wasn't it?

- **STEPHENS:**  Yeah. I got some uh (unintelligible) I gotta count and see how many.

- **UNKNOWN MALE:**  Alright uh if you want me to uh, if you want me, if I ain't got enough money let me know right now and I can uh have bro just come on cuz told me to call (unintelligible)

- **STEPHENS:**  It's gonna be like 270, it's 270.

- **UNKNOWN MALE:**  So I got enough on me alright I'll see you in a minute.

- **STEPHENS:**  Alright bet.

22. After the above call, Agents monitored the precision location information for the **Target Cellular Device**. Agents were able to determine that the UNKNOWN MALE left the Columbus area on the afternoon of June 1, 2021, and arrived early evening in the Detroit area. Agents continued to monitor the location information for the **Target Cellular Device** and attempted surveillance in the area where the deal was believed to take place on Detroit's east side. However, Agents were unable to positively identify the UNKNOWN MALE or identify any vehicle driven by the UNKNOWN MALE because agents only receive the precision location information from Verizon approximately once every 15 minutes, and also the precision location information is not precise enough for agents to determine UNKNOWN MALE's location. Based on additional TIII calls intercepted, Agents believe that STEPHENS and the UNKNOWN MALE did meet to conduct a drug transaction. The cellular location information for the **Target Cellular Device** showed that the UNKNOWN MALE departed the Detroit area at approximately 9:00 PM at night on June 1, 2021 and returned to the Columbus area.

23. Based on the foregoing, Agents request the authority to utilize a device that acts as a cell phone tower, sometimes referred to as a Cell Site Simulator or Wi-Fi geo-location device, which can collect information more frequently and precisely than cell site location information from Verizon, to assist in locating the **Target Cellular Device** and increase the likelihood of identifying the UNKNOWN MALE and determining the likely vehicles(s) utilized by UNKNOWN MALE.

24. Information obtained from this search warrant will be used to attempt to locate UNKNOWN MALE within the next 30 days.

## MANNER OF EXECUTION

25. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

26. To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target**

**Cellular Device** and use that information to determine the **Target Cellular Device's** location, even if it is located inside a house, apartment, or other building.

27. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

29. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or

11

user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

30. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

32. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
Robert J. Schmitz, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me, this _4_ day of June, 2021

_____
Chelsey M. Vascura
UNITED STATES MAGISTRATE JUDGE
Southern District of Ohio

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 614-753-3193, whose wireless provider is CellCo Partnership d/b/a Verizon Wireless.

## ATTACHMENT B

Pursuant to an investigation of unknown individual(s), possessing the Target Cellular Device, for a violation of 21 U.S.C. §§ 841 and 846 (the unlawful distribution of controlled substances and conspiracy to distribute controlled substances), this Warrant authorizes the officers to whom it is directed to determine the location of the Target Cellular Device identified in Attachment A by collecting and examining:

1. radio signals emitted by the Target Cellular Device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the Target Cellular Device in response to radio signals sent to it by the officers;

for a period of thirty days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will

be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. See 18 U.S.C. § 3103a(b)(2).